# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

*vs.*                                           **CRIMINAL ACTION NO. 2:12cr16**

**WINSTON IRONS,**

    **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

On June 28, 2012, Defendant, through counsel, filed a "Motion to Suppress" [Docket Entry 30]. The United States filed a Response and Objection to the Motion to Suppress on July 5, 2012 [Docket Entry 40].

On July 6, 2012, came Defendant in person and through counsel, Dwight R. Hall. The United States appeared through its Assistant United States Attorney, Andrew Cogar.

## I. Procedural History

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on May 1, 2012. The indictment charges him with Possession with Intent to Distribute Cocaine (Count One) and Possession with Intent to Distribute Less than 50 Kilograms Marijuana (Count Two), and contains a Forfeiture Allegation..

Defendant appeared before the Court for an arraignment on May 10, 2012, at which time he entered a plea of "Not Guilty" to both counts.

## II. Contentions of the Parties

Defendant contends:

1. The officers effectuated a traffic stop based only on an anonymous tip.

2. The traffic stop was illegal and violative of Defendant's Fourth Amendment rights against illegal search and seizure.

3. Subsequent to the traffic stop the police conducted a warrantless search of Defendant's vehicle expressly without his consent.

4. The search was therefore also violative of Defendant's Fourth Amendment rights against illegal search and seizure.

The United States contends:

1. The traffic stop was lawful based on information received that Defendant was driving a car on a license revoked for DUI.

2. Officers checked Defendant's criminal record, which indicated he was wanted in Florida.

3. After Defendant refused to consent to a search of his vehicle, a K-9 unit responded and alerted to the presence of narcotics in the vehicle.

4. The subsequent search of the vehicle was supported by probable cause and compliant with the Fourth Amendment.

### III. Statement of Facts.

The undersigned heard the sworn testimony of Officers William Courtney, Nicholas Cayton, and Sgt. Marshall Powers. The undersigned finds the testimony of the officers to be entirely credible. Each corroborated the testimony of the others and the testimony is also corroborated by fact. The undersigned finds the following facts:

On October 5, 2011, Officer William Courtney of the Buckhannon Police Department received information from a confidential informant ("CI") that Defendant would be coming into Buckhannon for a drug transaction. He would be driving on Rt. 33. Officer Courtney checked Defendant's criminal history, and found, among other things, that Defendant's operator's license was revoked for DUI. Officer Courtney testified he had been working with the CI for a couple of months and was familiar with the informant, whose information on other occasions had been corroborated

by other information. This was, however, the first instance where the CI was actually used in an incident.

Officer Courtney provided Officer Caynor, also of the Buckhannon Police Department, with the information from the CI, including a description of the vehicle Defendant would be driving. He also provided Officer Caynor with the information regarding Defendant's license having been revoked, as well as a mug shot of Defendant himself.

Officer Caynor believed he saw the vehicle early that day, but did not perform a stop at that time. Instead, he set himself up to observe the vehicles in that area. Later, at night, he again saw the vehicle that had been described to him by Officer Courtney. Moreover, he could identify the driver of the vehicle from the mug shot. He saw that the car had out-of-state license plates, testifying that is a sign that the vehicle may be a rental. All of these facts lined up with the information he had been provided.

Officer Caynor followed the vehicle until it parked at the Buckhannon WalMart. He then pulled in behind the vehicle. Defendant got out of the vehicle and began walking away from him and away from the WalMart. The officer found this move suspicious as there was "nothing" in the direction Defendant was walking. He began trying to engage Defendant in conversation. Defendant acted "surprised" he was being stopped. The officers testified they were on "high alert" due to Defendant's criminal history, so Officer Caynor spoke to Defendant only in regards to a non-extraditional outstanding warrant out of Florida. He believed Defendant would relax if he believed the only reason for stopping him was a warrant which he had been stopped on before, and for which he was not going to be extradited.

Shortly after Officer Caynor stopped Defendant, Officer Courtney arrived to assist. The

officers had also already contacted the K-9 Unit to meet them at the traffic stop and it was on its way. Officer Caynor told Officer Courtney Defendant was lying and acting nervous. He asked for the rental agreement for the vehicle. Defendant reached in the center console to get the rental agreement. As he did so, he also quickly took a white container out of the console and tossed it in the back of the car. Both officers witnessed him toss the container, adding to their suspicions.

Sgt. Powers arrived within 5 minutes with his canine. He testified he began walking the dog around the exterior of the vehicle. The dog alerted when it came to the hinged part of the driver's side door. He walked the dog around the vehicle a second time and it alerted at the same place.

The officers then searched the vehicle. There were ashes and a marijuana seed in the driver's side door. Defendant said he had just finished smoking a blunt. The officers seized from the vehicle the white container containing about 3.6 ounces of cocaine and $7,000.00 from the glove box. They patted down Defendant, finding $18.25 in his right front pocket and $551.00 in his left front pocket. They also seized a cell phone which Defendant had placed on top of the car. They later obtained a search warrant for the phone, which contained information indicative of narcotics sales.

Defendant did not produce a valid driver's license, nor was his name on the rental agreement for the vehicle. The officers impounded the car. Officer Courtney testified an inventory search of the impounded vehicle would always be performed pursuant to policy, to identify and document items of value for protection of the property and to prevent claims against the police for missing items. They always checked the entire vehicle. They would have checked the glove box, and the container was in plain view. They would not necessarily have searched the container. Officer Courtney also testified the police have had occasion to allow people who are arrested to contact others to come retrieve the vehicle.

Officer Caynor testified that he informed Defendant he was being detained due to the Florida warrant, but the real reason was for officer safety due to Defendant's criminal history. Defendant refused consent to search the vehicle.

Officer Caynor picked up the white container from the back of the vehicle. The lid was ajar, and he could see inside a baggie containing white powder. He also saw the ashes and marijuana seed in the driver's side door.

Officer Caynor testified that, although officers had allowed individuals to call others to pick up their vehicles previously if the person called could respond quickly and not delay the process, this was not done with respect to Defendant because he was driving a rental vehicle, which did not have Defendant's name on the rental agreement. Further, Defendant had no valid driver's license. Therefore the car was "going to be towed."

Sgt. Powers testified that he had been with the K-9 Unit for three years, as had the dog. He and the dog both had specialized training in locating drugs. He had used the dog more than 100 times in those three years. The dog had indicated positively on occasion when no drugs were found, but generally those were searches of items such as clothing, where the scent lingered even though no drugs were in the area. He considered this dog to be highly reliable and had a high level of confidence when it indicated positively.

### IV. Discussion

"Temporary detention of individuals during the stop of an automobile by the police . . . constitutes a 'seizure.'" Whren v. United States, 517 U.S. 806 (1996). "This is true no matter how brief the stop or how limited its purpose." United States v Branch, 537 F.3d 328 (4th Cir. 2008).

5

Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), the Court "analyze[s] whether the police officer's action was justified in its inception. Second, [it] analyze[s] whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." United States v. Digiovanni, 650 F.3d at 506 (4th Cir. 1992). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." Branch, supra, at 335.

Defendant first argues that the tip from the confidential informant that alerted the officers to Defendant's presence in Buckhannon was not reliable. The CI had only been used for a couple of months, and this was the first "incident" in which the CI was used. The officers testified, however, that they had corroborated other information provided by the CI with other officers, and found the CI's information to be reliable, albeit not yet used in an actual incident. Further, the CI's information that Defendant would be traveling into Buckhannon on Rt. 33 in a described car also was corroborated.

Even if the CI were not found to be reliable, Defendant was not stopped on only the CI's information. Officer Courtney looked up Defendant's record and found his license had been revoked for DUI. He also found a photograph mug shot of Defendant and had the description of the car.

Officer Caynor identified the car, and more importantly, identified Defendant from the photograph. He was aware Defendant had no valid driver's license. Defendant was therefore in violation of State law, which would be an independent reason to perform a traffic stop.

Defendant argues that the license violation was only a pretext to stop the vehicle to search for drugs. In United States v. Hassan El, 5 F.3d 726 (4th Cir. 1993), however, the Fourth Circuit rejected the argument that a vehicle stop for a minor traffic violation was pretextual, adopting instead

6

what is known as the "objective test." Under this test, as long as the officer has an objective right to stop a vehicle, irrespective of the officer's subjective motivation or suspicion, the subsequent seizure of evidence of a more serious offense will not be suppressed on the ground that the stop was pretextual. Moreover, the "objective test" applies "however minor" the traffic violation in question.

In this case, the Court finds the officer had an objective right to stop the vehicle. Further, Defendant was driving a rental car without a valid driver's license, which had been revoked for DUI. The Court finds this more than a "minor" traffic violation.

Even if the traffic stop itself was valid, Defendant argues the officers' search of the vehicle was without consent and without reasonable suspicion. The officers did testify Defendant refused consent to search. In the absence of "reasonable suspicion" of further criminal activity, the scope of a routine traffic stop is limited. Specifically, "the officer may request a driver's licence and vehicle registration, run a computer check, and issue a citation, but . . . any further detention for questioning is beyond the scope of a Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." United States v. Brugal, 209 F.3d 353 (4th Cir. 2000).

Even in the absence of reasonable suspicion sufficient to justify investigative detention, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Arizona v. Johnson, 555 U.S. 323 (2009).

It is well settled, both in the context of vehicle stops in particular and Terry stops in general, that the "reasonable suspicion" standard is not an onerous one. See, e.g., United States v. Arvizu, 534 U.S. 266 (2002)(approving vehicle stop based on "reasonable suspicion"). In this case, Defendant was committing a crime simply by driving the vehicle without a valid license. The

vehicle was therefore lawfully detained. Under the "automobile exception," if a car is "readily mobile" and probable cause exists to believe it contains contraband or evidence of a crime, a warrantless search is permissible. See, e.g., Maryland v. Dyson, 527 U.S. 465 (1999). Assuming probable cause to search the vehicle, law enforcement may conduct a warrantless search "that is as thorough as a magistrate could authorize in a warrant." United States v. Ross, 456 U.S. 798 (1982). This includes a warrantless search of any containers or compartments found in the vehicle. Wyoming v. Houghton, 526 U.S. 295).

When a trained narcotics dog "alerts," this fact alone constitutes probable cause to search. United States v. Jeffus, 22 F.3d 554 (4th Cir. 1994)(use of drug dog not itself a "search," but fact that drug dog "alerts" constitutes probable cause to search). Further, the undisputed testimony was that the drug dog sniff did not take an unreasonable amount of time. When both the initial stop and its duration are proper, the Fourth Circuit has found no Fourth Amendment violation in bringing a drug-detection dog onto the scene of an otherwise routine, suspicion-free traffic stop. Here, the officers testified the dog arrived within 5 minutes of the stop. "A canine sniff is . . . constitutionally permissible if performed within the 'time reasonably required' to issue a traffic citation"; "Because a drug dog sniff is not a search within the meaning of the Fourth Amendment . . . it requires no additional justification." United States v. Branch, 537 F.3d 328 (4th Cir. 2008).

If the occupant has been arrested or there is probable cause to search the vehicle for contraband or other evidence, the probable cause to search continues in force even after "exigent circumstances" no longer exist - - or, to update this language, even after the vehicle is no longer "readily mobile." Florida v. Myers, 466 U.S. 380 (1984).

Finally, the officers testified that the vehicle would have been searched pursuant to policy,

even had it not been searched earlier. Defendant had no license, and was not on the rental agreement. The Court finds under these conditions, towing the car and impounding it was reasonable. Second, vehicle inventory searches are a well recognized exception to the Fourth Amendment warrant requirement, supported by governmental interests in protecting the owner's property, protecting the police from possible danger, and insuring against false claims. See, e.g., Florida v. Wells, 495 U.S. 1 (1990). Therefore, even if the search exceeded its scope, the seized items would be admissible under the "inevitable discovery" rule because the vehicle was taken into custody and the items would have been discovered in a proper vehicle inventory search. Nix v. Williams, 467 U.S. 431 (1984). The officers testified the car was impounded, and pursuant to policy, an inventory search would have been performed even if the car weren't searched previously.

## V. CONCLUSION

Upon consideration of all of the above, the undersigned United States Magistrate Judge finds all the evidence seized by the police in the above case is admissible and therefore RECOMMENDS the Motion to Suppress be DENIED.

## VI. RECOMMENDATION

Inasmuch as an order denying defendant's motion to suppress may be tantamount to a dispositive motion, it is the **RECOMMENDATION** of the undersigned Magistrate Judge that Defendants' Motion to Suppress (Docket Entry 30) be **DENIED.**

Any party may, within fourteen (14) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John

Preston Bailey, Chief United States District Judge. Failure to timely file objections to the Report and Recommendation for Disposition set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 9th day of July, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE